## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN THE MATTER OF THE** | **CIVIL ACTION** |
| **COMPLAINT OF TEON MARIA,** | |
| **LLC, AS OWNER, AND DENET** | |
| **TOWING SERVICE, INC., AS** | **NO: 12-1315** |
| **MANAGER, OWNER *PRO HAC VICE*,** | **c/w:  12-2570** |
| **AND/OR OPERATOR, OF THE M/V** | |
| ***TEON MARIA*, FOR EXONERATION** | |
| **FROM OR LIMITATION OF** | |
| **LIABILITY** | **SECTION: "G" (4)** |

<u>**ORDER**</u>

Before the Court is a **Motion for Leave to File Third-Party Complaint (R. Doc. 26)**, filed by Limitation Plaintiffs, Teon Maria, LLC, ("Teon") as owner, and Denet Towing Service, Inc., ("Denet") (collectively, "Limitation Plaintiffs"), seeking leave to file a third-party complaint against Dune Properties, Inc., ("Dune Properties") and ABC Insurance Company, ("ABC").  Dune Energy, Inc., ("Dune Energy") has filed a "memorandum . . . regarding" the motion.  (R. Doc. 28).[1]  The motion was heard on the briefs on July 5, 2013.

### I.    <u>Background</u>

This is a limitation action arising out of an alleged allision which occurred on or about February 27, 2012 in the Johnson Bayou south of Pass-a-Loutre in southern Louisiana.  *See* (R. Doc.

---

[1]According to Limitation Plaintiffs, Dune Energy has admitted in discovery that Dune Properties is a wholly owned subsidiary of Dune Energy.  (R. Doc. 26-1, p. 1).  Dune Energy provides no insight into the corporate relationship between the two entities in the course of its filing.

1, p. 2).[2]  The allegations in the liability action are that Denet, who was the owner and operator of the barge M/V TEON MARIA, negligently allowed the barge to impact a wellhead owned by Dune Energy.  As a result, Dune Energy contacted the U.S. Coast Guard, and "began cleanup operations as required."   (No. 12-2570, R. Doc. 1, p. 2).  In so doing, it incurred expenses related to assessing, containing, and cleaning up the spill.  *See id.* at 1-4.  Dune Energy was reimbursed for these expenses by its insurer, Certain Underwriters of Lloyd's of London ("Lloyd's"), pursuant to an unrelated contractual agreement.  *See id.*

Lloyd's, which alleges that it now stands in the shoes of Dune, then brought this negligence action against both Denet *in personam* and against the TEON MARIA *in rem*, alleging that Denet and the TEON MARIA were wholly responsible for the allision.  *See id.* at 3.  Lloyd's sought (1) the costs and expenses associated with oil spill assessment and response, environmental pollution and contamination, and cleanup; (2) pre-judgment and post-judgment interest, as well as court costs; and (3) any other damages to which Dune might be entitled.  *Id.* at 4.  Lloyd's asserted that its cause of action was an admiralty and maritime claim pursuant to Federal Rule of Civil Procedure ("Rule") 9(h).  *Id.* at 1.

Prior to the time Lloyd's filed its complaint, Limitation Plaintiffs filed a limitation action for any and all damages they might be held responsible for as a result of the allision.  *See* (No. 12-2272, R. Doc. 1, p. 1).  Therein, Limitation Plaintiffs allege that Teon Maria, LLC was the owner of the TEON MARIA, and that Denet was the manager, owner *pro hac vice* and/or operator of the vessel.  *Id.*  Thereunder, Limitation Plaintiffs have alleged that while they are not liable for damages arising

---

[2]The Complaint indicates that the allision occurred on either February 27, 2012 or February 28, 2012.  Because the precise date is immaterial for present purposes, February 27, 2012 will be used herein for the sake of consistency.

2

in connection with the February 27, 2012 allision, they have brought the instant suit to limit their liability against Dune Energy in the event that Dune Energy prevails in its liability action. *Id.* Limitation Plaintiffs also stated that their cause of action was an admiralty and maritime claim pursuant to Federal Rule of Civil Procedure ("Rule") 9(h). *See id.*

Lloyd's filed an Answer to the limitation action, stating, *inter alia*, that to the extend Lloyd's damages from the February 27, 2012 allision fell under the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA"), the Limitation Plaintiffs could not exonerate or limit their liability for proximately causing those damages, to the degree they stemmed from pollution removal costs and damages. (R. Doc. 19, p. 6).[3]

Dune Energy also filed an Answer, in which it argues that "at the time of the casualty, there was in effect a Master Service Agreement [("Dune Energy MSA")] between Denet . . . and Dune [Energy], under the terms of which Denet . . . is required to defend, indemnify and hold harmless Dune [Energy] for all environmental liabilities caused by or arising out of the negligent act or omissions of Denet . . . a claim which is not subject to limitation under the statutes of the United States." (R. Doc. 9, p. 9). Dune Energy alleges that Limitation Plaintiffs are liable to it "both under the general maritime law of the United States and by virtue of the terms of the [Dune Energy MSA]." *Id.*

The presiding U.S. District Judge subsequently consolidated the limitation and liability actions. *See* (R. Doc. 16). On May 17, 2013, Limitation Plaintiffs filed the instant Third-Party Complaint. (R.

---

[3]Lloyd's originally filed an Answer on November 29, 2012 (R. Doc. 8), and filed an Amended Answer on February 15, 2013. (R. Doc. 19)

Doc. 26-4).[4]  Therein, they name as defendants both Dune Properties and ABC.  *Id.* at 1.  Limitation Plaintiffs allege that they are entitled to a contractual defense and/or indemnity from Dune Properties, which flows from a Master Service Agreement ("Limitation Plaintiffs' MSA") entered into between Denet and Goldking Operating Company, ("Goldking") which was effective when the accident occurred.  *Id.* at 2.  Limitation Plaintiffs allege that on February 22, 2013, Dune Energy admitted in its discovery responses that "Goldking eventually became Dune Properties and Dune Properties, a wholly owned subsidiary of Dune Energy, assumed the obligations of Goldking  pursuant to a Purchase and Sale Agreement between Goldking Energy, Inc. and Dune Energy."  (R. Doc. 26-34, pp. 2-3).  According to Paragraph 9.4 of the Limitation Plaintiffs' MSA, Goldking also agreed to procure and maintain insurance coverage for its Limitation Plaintiffs' MSA contractual obligations, "and shall name Denet as an additional insured in all applicable insurance policies.  Accordingly, Limitation Plaintiffs argued that ABC Insurance Company may owe insurance coverage to Denet Towing and its affiliates."  *Id.* at 3.

The instant motion was noticed for submission on June 5, 2013.  Limitation Plaintiffs state that "Counsel . . . has contacted all parties regarding whether they have any objection to the filing of this *Unopposed* Motion for Leave to File Third Party Complaint.  Consent to the filing has not yet been obtained."  (R. Doc. 26-2, p. 1) (emphasis added).  Limitation Plaintiffs state that after contacting all parties, it was "agreed to set this motion for submission on June 5, 2013."  (R. Doc. 26-1, p. 2).

---

[4]The Court's Scheduling Order provides that amendments to pleadings, as well as third party actions, were to be filed no later than May 16, 2013.  (R. Doc. 22).  Limitation Plaintiffs originally filed this proposed Third-Party Complaint on May 16, 2013, but it was marked deficient by the clerk's office.  At that time, Limitation Plaintiffs were given seven days to cure the deficiency.  By filing an appropriate pleading one day later, Limitation Plaintiffs were entitled to avail themselves of a retroactive May 16, 2013 filing date, and therefore the pleading is timely under the Court's Scheduling Order.

Subsequently, Dune Energy filed a "memorandum" into the record, in which it stated that while it did not oppose the instant motion for leave to file, "[t]he content and substance of the Third-Party Complaint itself are subject to affirmative defenses and denials of Dune Properties, Inc., to be set forth in its Answer to the Third-Party Complaint, none of which is waived."  (R. Doc. 28, p .1).[5]

## II.   Standard of Review

Federal Rule of Civil Procedure ("Rule") 14(a) governs a plaintiffs' assertion of claims against a third party.  Under this Rule, "[t]he plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."  *Id.*  Courts are granted wide discretion in determining whether to permit third-party claims.  *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 182 (5th Cir. 1984).  However, "Rule 14(a)(3) does not dispense with the requirement that the Court have jurisdiction over the subject matter of the claim."  *J.S. v. American Institute for Foreign Study, Inc.*, 2013 WL 1822760, at *1 (W.D. Tex. Apr. 30, 2013).  Rule 14(a) "does not automatically establish a direct relationship between [the] plaintiff and the third-party defendant."  *Luera v. M/V Alberta*, 635 F.3d 181, 185 n.3 (5th Cir. 2011).

Rule 9(h) states "[i]f a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for the purpose[] of Rule[] 14(c)."  Rule 14(c) states that "[i]f it the plaintiff asserts an admiralty claim under Rule 9(h), the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable - either to the plaintiff

---

[5]Local Rule 7.3 states, "A motion for an order, allowed by these rules to be filed ex parte or by consent, need not assign a date for submission but must by accompanied by a proposed order."  L.R. 7.3.  The instant motion does not contain a proposed order.  Therefore, if construed as an *ex parte* submission, it would be in contravention of the Rule.  As such, it is more appropriate to consider this motion as a "contested" motion under L.R. 7.4, which did not become ripe for decision until June 5, 2013.

or to the third-party plaintiff - for remedy over, contribution, or otherwise on account of the same transaction, occurrence or series of transactions or occurrences." Rule 14(c)(1).  Rule 14(c) also requires that the district court have jurisdiction over the underlying claim. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) (citing Rule 14(c)).

Rule 14(c)'s unique joinder policy (1) reduces the possibility of inconsistent results in separate actions, (2) eliminates redundant litigation, and (3) prevents a third party from disappearing if jurisdiction and control over both a party and the assets that party controls were not immediately established. *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.*, 243 F.3d 906, 910 (5th Cir. 2001); *Reynolds v. Everready Marine, Inc.*, 2003 WL 21088095, at *2 (E.D. La. May 7, 2003).

## III.   <u>Analysis</u>

### A.   <u>Assertion of Admiralty Under Rule 9(h)</u>

#### 1.   **Was Rule 9(h) Properly Asserted in the Third-Party Complaint?**

The first issue is whether Limitation Plaintiffs have properly designated Rule 9(h) as governing this Complaint.  Limitation Plaintiffs do not cite any Rules of Civil Procedure supporting their request to file the instant Third Party Complaint.  There is no jurisdictional basis specified in the body of the Third Party Complaint.  Instead, Limitation Plaintiffs claim allege only that "[t]o the extent that Limitation Plaintiffs might be held responsible for a Judgment entered against them for damages allegedly sustained [in the liability action] . . . then Limitation Plaintiffs are entitled to a contractual defense and/or indemnity from Dune Properties . . . pursuant to the [Limitation Plaintiffs' MSA]." (R. Doc. 26-4, p. 2).  Indeed, it is not even clear whether the Dune Energy MSA referred to in Dune Energy's Answer, and the Limitation Plaintiffs' MSA referred to in the Limitation Plaintiffs' Third

Party Complaint, pertain to the same "MSA."

Parties seeking to bring an action under Rule 14(c) are typically obligated to "designate the claim as one in admiralty as provided in Rule 9(h) in order to invoke the special admiralty provisions." Charles Alan Wright, et al, 6 Federal Practice & Procedure, § 1465 (3d ed 2010). An intent to do so can be construed indirectly from the facts of the case. *See Texas A & M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394, 399 (5th Cir. 2003). "The mere assertion of admiralty jurisdiction as a dual or alternate basis of subject matter jurisdiction is sufficient to make a Rule 9(h) election to proceed in admiralty for that claim." *United States v. American Commercial Lines, LLC*, No. 11-2076, 2013 WL 1182963, at *3 (E.D. La. Mar, 21, 2013) (emphasis and citation omitted) (allowing defendant to utilize Rule 14(c) joinder provision in case where plaintiff had asserted jurisdiction under, *inter alia*, admiralty and the OPA).

Here, both of the underlying consolidated actions assert that the matter was within the admiralty and maritime jurisdiction of the United States pursuant to Rule 9(h). (No. 12-2272, R. Doc. 1, p. 1; No. 12-2570, R. Doc. 1, p. 1). The facts of this case, in which the original liability and limitation actions were asserted under Rule 9(h) and the allegations in the Third Party Complaint relate directly to the outcome of those proceedings, suffice to show that Limitation Plaintiffs may assert their joinder claims under Rule 14(c) against Dune Properties and ABC in their Third Party Complaint. *See Texas A & M Research*, 338 F.3d at 399.

### 2.    Can Plaintiffs Properly Assert Rule 14(c)?

The next issue is whether *Limitation Plaintiffs* are proper parties to assert a Rule 14(c) action. In general, "Rule 14(c) permits a *defendant* to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification for the third-party defendant, and (2) to tender the third-party

7

defendant to the plaintiff." *Ambraco*, 570 F.3d at 243 (emphasis added); *see Brasiliera S.A. v. M/V Alice St. Philip*, 790 F.2d 412, 417 & n.9 (5th Cir. 1986). The plain language of the Rule does not extend to *plaintiffs*.

However, one trial court noted that use of Rule 14(c) was proper where a limitation plaintiff in a maritime suit sought to implead a third party defendant for contribution and indemnity owed on the basis of negligence and breach of contract. *In re McAninch*, 392 F. Supp. 96, 96 (S.D. Tex. 1975). In that case, the court noted that although the plain language of the Rule did not allow for an original "plaintiff" to assert a claim under the Rule, doing so was a reasonable extension of the same, because "[t]o utilize Rule 14(c) in the limitation proceedings following a maritime disaster will certainly expedite the matter by getting all the parties concerned involved in a single proceeding." *Id. See also In re Katrina Dredging Limitation Actions Consolidated Litigation*, No. 06-8676, 2008 WL 3876461, at *2 (E.D. La. Aug, 20, 2008) (citation omitted) (noting in dicta that "[t]he petitioner in proceedings for limitation of liability pursuant to the limitation statute may implead third parties, in a limitation of liability action.").

Therefore, the Court finds that the fact that Limitation Plaintiffs can seek recourse in Rule 14(c) joinder notwithstanding the fact that, in this case, they are not technically "defendants."

**B.     Same Transaction or Occurrence**

In this case, Limitation Plaintiffs seek to implead Dune Properties, who they assert has assumed the indemnity and insurance obligations contained in the Limitation Plaintiffs' MSA originally signed between Goldking and Denet. (R. Doc. 26-1, p. 2). They also assert that ABC should be liable on account of the Limitation Plaintiffs' MSA which mandates that Dune Properties, through Goldking, must procure insurance to cover Denet. *Id.* Neither Dune Properties nor ABC has

filed a motion opposing the proposed Third-Party Complaint; Dune Energy states only that Dune Properties reserves the right to assert denials and affirmative defenses to the same.  (R. Doc. 28, p. 1).

Limitation Plaintiffs' facts are currently uncontested, and if true, the claim for indemnity would plainly arise out of the same "transaction or occurrence" as that of their underlying limitation action. *See Ambraco*, 570 F.3d at 243 (finding that agreement between parties that indemnity action could "stem from the same transaction" as the original cause of action for negligence in connection with maritime shipment).

### C.   Jurisdiction Over the Third Party Claims

The next issue is whether jurisdiction over the subject matter is proper.  The Court notes allowing the Third-Party Complaint under Rule 14(c) is not without complications.  For example, nothing is known about the substance of the Limitation Plaintiffs' MSA which governs this dispute, except that Limitation Plaintiffs allege that under its provisions Dune Properties (1) has a duty of indemnification, and (2) shall procure insurance.  *Id.* at 2.  Limitation Plaintiffs provide no indicia of any other contractual provisions in the Limitation Plaintiffs' MSA, which might indicate whether the contract can specifically be considered to be a "maritime" contract.  *See Gulf Coast Shell and Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) ("To determine whether a contract is maritime, we look to whether the nature of the transaction was maritime, and whether the services performed under the contract are maritime in nature.") (internal quotations omitted).

Further, there is no mention whether the Limitation Plaintiffs' MSA contains a forum selection clause, and whether such a clause might divest the District Court's exercise of jurisdiction.  *See Ambraco*, 570 F.3d at 243 (acknowledging that forum selection clause in contract could divest court

of jurisdiction).

Such complications are, however, blunted by the fact that Rule 14(c) is a procedural device, and that a plaintiff joined under Rule 14(c) is not excused from ultimately alleging claims for which relief is cognizable. *See American Commercial Lines*, 2013 WL 1182963, at *3. Moreover, neither Dune Properties nor ABC has elected to file a motion contesting joinder as a general matter, although Dune Properties "reserved the right" to contest the Third Party Complaint. *See* (R. Doc. 28, p. 1).[6] To the degree that factual development may indicate that jurisdiction was inappropriate, that issue is not presently before the Court.

### D.    Reducing Inconsistency, Eliminating Redundancy, Securing Resolution

Finally, the Court considers whether the factors of (1) reducing inconsistency, (2) eliminating redundant litigation, and (3) securing third parties are furthered by allowing Rule 14(c) joinder here.

The Court finds that, because any indemnity and contribution action directly relates to a judgment obtained from the consolidated underlying actions, allowing Limitation Plaintiffs to join Dune Properties and ABC would be consistent with the policies of achieving greater consistency and diminishing redundancy. *See* Rule 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions.").

Further, the Court notes that Dune Properties is described only as a "foreign corporation" authorized to do business in the State of Louisiana." (R. Doc. 26-4, p. 1). The Court also notes that the "chain of liability" for this accident has passed hands several times since the February 27, 2012 allision. Because Dune Properties' company size and physical location are currently unknown and the

---

[6]The Court notes that the signature block of the opposition was signed by an attorney of record for Dune Energies. (R. Doc. 28).

assets potentially available to secure a judgment are uncertain, allowing joinder under Rule 14(c) will bring more speed and certainty to the fact-finding process.

For all of these reasons, pursuant to Rule 14(c), the Court finds that Limitation Plaintiffs' Motion for Leave to File the Third Party Complaint against Dune Properties and ABC has merit, and should be granted.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion for Leave to File Third-Party Complaint (R. Doc. 26)**, filed by Limitation Plaintiffs, Teon Maria, LLC, as owner, and Denet Towing Service, Inc., ("Limitation Plaintiffs") is **GRANTED**.

New Orleans, Louisiana, this 10th day of June 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

11